UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REALNETWORKS, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>QSA TOOLWORKS, LLC, a New York limited liability corporation,<br><br>Defendant. | CASE NO.<br><br>COMPLAINT FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL |

Plaintiff RealNetworks, Inc. ("RealNetworks"), through its undersigned attorneys, hereby alleges as follows:

### I.   JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338 as this matter arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

2. RealNetworks' claims arise in whole or in part in this District, and the Defendant transacts business within this District. Accordingly, venue is proper under 28 U.S.C. § 1391(b) and (c).

COMPLAINT FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL - 1
CASE NO.

Complaint.003.doc

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

dockets.Justia.com

## II. THE PARTIES

3. Plaintiff RealNetworks is a pioneer in the creation, delivery, playback, and security of audio and video digital media content over networks. RealNetworks is organized under the laws of the State of Washington. Its headquarters is in Seattle, Washington.

4. Upon information and belief, Defendant QSA Toolworks, LLC ("QSA") is organized under the laws of the State of New York and its headquarters is in New York, New York. QSA intentionally does business in Washington State and in the Western District of Washington, including, without limitation, by (a) offering, selling and delivering software products over the internet to residents of the State of Washington, including residents in the Western District, and (b) by forming contracts in the State of Washington, including the Western District. QSA has sold its software products and services to a number of Washington residents.

## III. STATEMENT OF FACTS

**RealNetworks' Digital Media Platform.**

5. RealNetworks is a global leader in the delivery of software development tools for the creation and delivery of audio and video digital media over the Internet and other networks.

6. In July 2002, RealNetworks released its HELIX digital media software platform—an open, comprehensive software platform that enables the creation of digital media products and applications for any format, operating system, or device. The HELIX software platform provides developers access to source code to build and enhance products for the creation, delivery, and playback of digital media.

7. RealNetworks' HELIX digital media software platform is available to software developers for download at the *www.helixcommunity.org* website owned and maintained by RealNetworks. The HELIX software is available for license in source code form under both open source and commercial source licenses.

8. Since its launch in July 2002, the HELIX Community website has had more than 100 million page views and more than 3.5 million software downloads. As of July 2007,

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 2
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

1  RealNetworks' HELIX software licensees have shipped more than 175 million units of products
2  containing RealNetworks' HELIX client software.

3        9.     RealNetworks also licenses HELIX digital media servers to commercial entities for
4  use in streaming digital media over the internet, mobile networks, and other networks. More than
5  100 mobile operators in more than 40 countries around the world use HELIX servers to deliver
6  digital media content over their networks.

**The Chip Merchant ("TCM").**

8        10.     Upon information and belief, on or about 2000, The Chip Merchant ("TCM")
9  purchased a company called Helix Technologies. As part of that purchase, TCM acquired certain
10 Helix Technologies intellectual property, including its relational database software product,
11 "Helix," and related common law and federally registered trademarks.

12       11.     Prior to its purchase of Helix Technologies, TCM's predecessors registered a
13 HELIX trademark with the U.S. Patent and Trademark Office ("PTO") for "computer programs
14 and program manuals, all sold as a unit, for use in data based (sic) management" (Reg.
15 No. 1,682,683).

16       12.     Subsequent to its purchase of Helix Technologies, TCM registered, in its own
17 name, the HELIX RADE trademark for "computer software for database development" (Reg.
18 No. 2,566,500). (Collectively, with HELIX (Reg. No. 1,682,683) described in Paragraph 11
19 above, described herein as "the TCM HELIX Marks.")

**RealNetworks' Consent Agreement With The Chip Merchant.**

21       13.     On or about June 2002, and prior to RealNetworks' use of its HELIX marks
22 (collectively, the "Real HELIX Marks"), RealNetworks contacted TCM and confirmed that no
23 confusion existed between TCM's use of the mark HELIX for database management software and
24 RealNetworks' proposed use of the mark HELIX for digital media development software.

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 3
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

14. On or about June 26, 2002, RealNetworks and TCM executed a consent agreement providing that both parties would use the HELIX mark in their respective fields ("Consent Agreement").

15. The Consent Agreement provided in relevant part as follows:

Paragraph B:

> Real Helix Product is defined as a "platform which includes software applications for content creation, delivery and playback, and associated software development tools" relating to the "deliver[y] of various types of digital media (including audio, video, text, animations, graphics and data) over the Internet and other networks."

Paragraph 1:

> "[T]he parties believe in good faith that concurrent use of their respective [HELIX] marks for their respective goods and services is not likely to cause consumer confusion, mistake or deception."

Paragraph 2:

> "TCM shall not oppose or otherwise contest the right of Real or its licensees to use and/or register the mark HELIX (or any mark containing the word "HELIX") in any jurisdiction in the world for or in connection with the Real Helix Product."

Paragraph 6:

> "This Consent Agreement . . . will bind and inure to the benefit of the officers, agents, employees, successors, assigns, affiliates, related companies, and licensees of each party. . . ."

16. In reliance on the Consent Agreement, RealNetworks adopted and began using the Real HELIX Marks, and on July 18, 2002, filed its application to register HELIX with the PTO in connection with the goods and services outlined in the Consent Agreement. On July 19, 2002, RealNetworks filed a second application to register the mark HELIX (and DESIGN).

**QSA Toolworks.**

17. Upon information and belief, on or about April 24, 2003, TCM filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The filing was subsequently converted to Chapter 7.

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 4
CASE NO.

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

18. Upon information and belief, on or about July 21, 2004, the bankruptcy trustee sold the stock of TCM's wholly-owned subsidiary, Helix Software Technologies ("HST") to Defendant QSA Toolworks, LLC ("QSA").

19. Upon information and belief, on or about December 22, 2005, QSA filed a trademark application at the PTO to register the mark HELIX for goods including "sound, graphic, animated and/or text" data (Ser. No. 78779957).

20. On January 4, 2006, QSA commenced an Opposition at the Trademark Trial and Appeal Board ("TTAB") against RealNetworks. QSA's Opposition alleges that QSA owns the TCM HELIX Marks and that it has priority over RealNetworks with respect to use of the mark HELIX, generally. QSA's Opposition further alleges that QSA would be damaged by RealNetworks' registration of the mark HELIX because of a likelihood of confusion with the TCM HELIX Marks.

21. Subsequently, on February 7, 2007, QSA commenced a second Opposition at the TTAB, alleging trademark infringement.

22. An actual controversy has arisen and now exists between the parties relating to: (a) whether QSA has any rights whatsoever in the TCM HELIX Marks; (b) in the event QSA is able to demonstrate it has any rights whatsoever in the HELIX Marks, whether the Consent Agreement is binding on QSA; and (c) whether there is a likelihood of confusion with respect to RealNetworks' and QSA's respective uses of the mark HELIX.

23. A declaratory judgment is necessary in that RealNetworks contends that: (a) QSA has no rights whatsoever in the TCM HELIX Marks, and any rights QSA has in the HELIX marks are common law rights junior to RealNetworks' rights in the mark HELIX; (b) even if QSA can demonstrate that it has rights in the TCM HELIX Marks, QSA is bound by the terms of the Consent Agreement as an assign and/or successor of TCM; and (c) regardless of any trademark rights QSA may have, there is no likelihood of confusion with respect to each parties' use of

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 5
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc


HELIX for their respective goods and services. RealNetworks is informed and believes that QSA disputes these contentions.

### IV. COUNT ONE: DECLARATORY RELIEF DECLARING REALNETWORKS' PRIORITY RIGHTS TO HELIX

24. RealNetworks repeats the allegations set forth in Paragraphs 1-23 above and reincorporates such allegations herein by reference.

25. An actual controversy has arisen and now exists between the parties with respect to whether QSA has any rights in the TCM HELIX Marks. Specifically, RealNetworks' contends that:

    a. At all relevant times, TCM was the owner of the TCM HELIX Marks.

    b. TCM never transferred or assigned the TCM HELIX Marks to HST.

    c. QSA's purchase of the HST stock did not include any rights to the TCM HELIX Marks.

    d. QSA has not acquired rights senior to RealNetworks' rights in the Real HELIX Marks in any other way.

26. RealNetworks is informed and believes that QSA disputes the contentions set forth in Paragraph 25 above.

27. RealNetworks requires a judicial determination of its rights, respective to QSA's, to use the term HELIX.

### V. COUNT TWO: DECLARATORY RELIEF DECLARING THAT THE CONSENT AGREEMENT IS BINDING ON QSA AND QSA HAS BREACHED THE SAME

28. RealNetworks repeats the allegations set forth in Paragraphs 1-27 above and reincorporates such allegations herein by reference.

29. An actual controversy has arisen and now exists between the parties with respect to QSA's obligations under the Consent Agreement. Specifically, RealNetworks contends that:

    a. At the time RealNetworks entered into the Consent Agreement with TCM, TCM was the owner of the TCM HELIX Marks.

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 6
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

      b.    Because of the differences between the parties' respective goods and services, TCM and RealNetworks agreed that there was no likelihood of confusion between RealNetworks' and TCM's concurrent use of the term "HELIX" in their respective fields of use, and such concurrent use would not result in consumer confusion, mistake or deception as to the source of the goods sold.

      c.    TCM agreed that it would not oppose or otherwise contest RealNetworks' right to use and/or register the mark "HELIX" (or any other mark containing the word "HELIX") in connection with RealNetworks' HELIX goods and services.

      d.    TCM and RealNetworks agreed that the marks, as currently used for their respective goods, were not confusing as identified in the Consent Agreement.

      e.    The Consent Agreement binds any successor, assign, affiliate, licensee and/or related company.

      f.    RealNetworks has performed all of its obligations under the Consent Agreement.

      g.    Any rights QSA acquired in the mark HELIX were acquired no earlier than 2004, when QSA was incorporated, making it a junior user of the mark HELIX.

      h.    To the extent QSA has any rights in the TCM HELIX Marks, it is bound by the terms of the Consent Agreement as an assign and/or successor of TCM, and therefore, is prohibited from (i) filing applications for goods and services listed as belonging to RealNetworks in the Consent Agreement, and/or (ii) opposing or otherwise contesting RealNetworks' use or registration of the HELIX mark in connection with RealNetworks' goods and services.

      i.    As an assign and/or successor to TCM, QSA is in breach of its obligations under the Consent Agreement and RealNetworks has been damaged by such breach.

30.    RealNetworks is informed and believes that QSA disputes the contentions set forth in Paragraph 29 above.

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 7
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

31.  RealNetworks requires a judicial determination of QSA's obligations under the Consent Agreement and QSA's breach thereof.

### VI.  COUNT THREE: DECLARATORY RELIEF REGARDING A DETERMINATION OF NO LIKELIHOOD OF CONFUSION

32.  RealNetworks repeats the allegations set forth in Paragraphs 1-31 above and incorporates such allegations herein by reference.

33.  In the event QSA is able to demonstrate rights in the TCM HELIX Marks, an actual controversy has arisen and now exists between the parties with respect to RealNetworks' use of its HELIX marks. Specifically, RealNetworks contends that:

  a.  RealNetworks' use of HELIX, including use and registration of the Real HELIX Mark in connection with its digital media software platform is not likely to cause consumer confusion as to the source of such goods and services.

  b.  RealNetworks' use of the Real HELIX Marks in connection with its digital media software platform goods and services does not violate any trademark rights of QSA.

  c.  RealNetworks has the right to use and register HELIX, including the Real HELIX Marks, in connection with its digital media software platform goods and services.

  d.  RealNetworks has the right to maintain its U.S. trademark applications and registrations for the Real HELIX marks.

34.  RealNetworks is informed and believes that QSA Toolworks disputes the contentions set forth in Paragraph 33 above.

35.  RealNetworks requires a judicial determination of its rights to use the mark HELIX for its digital media software goods and services.

### VII.  RELIEF SOUGHT

WHEREFORE, Plaintiff RealNetworks, Inc. respectfully prays the Court as follows:

A.  That the Court declare that QSA has no rights in the TCM HELIX Marks and that any rights QSA has in HELIX emanate from QSA's inception in 2004;

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 8
CASE NO.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Complaint.003.doc

B.  That if QSA has rights in the TCM HELIX Marks, the Court declare that the Consent Agreement is binding on QSA and RealNetworks; that QSA has breached its obligations under the Consent Agreement; and that RealNetworks has been damaged as a result;

C.  That the Court declare that QSA's trademark application (Ser. No. 78779957) to register the mark HELIX listing goods identified as RealNetworks' goods is in breach of the Consent Agreement and that such application therefore be cancelled;

D.  That the Court declare that there is no likelihood of confusion with respect to RealNetworks' and QSA's use of HELIX in their respective marks for their respective goods and services;

E.  That the Court order a damage award against QSA and to RealNetworks for the damage caused RealNetworks as a result of QSA's breach of the Consent Agreement, in an amount to be proven at trial;

F.  That the Court order an award of reasonable attorneys' fees and costs to RealNetworks;

G.  That the Court grant such other and further relief as to the Court deems just and proper.

## VIII.  JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues in this case so triable.

COMPLAINT FOR DECLARATORY RELIEF; DEMAND
FOR JURY TRIAL - 9
CASE NO.

Complaint.003.doc

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  DATED this 6th day of December, 2007.

2

3                                SUMMIT LAW GROUP PLLC
                                 Attorneys for RealNetworks, Inc.
4

5                                By _____
                                   Ralph H. Palumbo, WSBA #04751
6                                  Lynn M. Engel, WSBA #21934
                                   ralphp@summitlaw.com
7                                  lynne@summitlaw.com

8                                315 Fifth Avenue South, Suite 1000
                                 Seattle, WA  98104-2682
9                                Tel:  (206) 676-7000
                                 Fax: (206) 676-7001
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DECLARATORY RELIEF; DEMAND              SUMMIT LAW GROUP PLLC
FOR JURY TRIAL - 10                                   315 FIFTH AVENUE SOUTH, SUITE 1000
CASE NO.                                              SEATTLE, WASHINGTON 98104-2682
                                                      Telephone:  (206) 676-7000
                                                      Fax:  (206) 676-7001
Complaint.003.doc